Mr. Cochran, is that correct? Mr. Kelly, Your Honor. Kelly, I'm sorry. I believe Mr. Cochran may be an attorney on a subsequent case this morning. I apologize. You're absolutely right. You are Mr. Kelly, indeed. Please proceed. Good morning, Your Honors. May it please the Court, my esteemed counsel and colleague, Mr. Jolly, my name is Mike Kelly and I represent Christopher Disnute, Philip Curry, and the minor, Philip Curry, Jr. in this matter. Your Honors, it is our position that this matter, well, let me back up a second. We're here on an appeal from a grant of a summary judgment motion made by the defendant, the City of Puyallup, and two individual police officers in this matter. As Your Honors are aware, an appeal of a grant of summary judgment is heard de novo, and that is important for a couple reasons in this case. We're here on essentially two separate issues, at least that I've narrowed to two separate issues, the issue of discrimination in a public accommodation, which I'd like to address chiefly, and as an aside, I'd like to reserve three minutes here. Let me ask you something to begin with. Sure. Is there some difference in the burden on the federal claim and the state claim? In the burden? In other words, could one successfully, logically escape on the federal claim but still be held liable on the state claim? Certainly, Your Honor, and that's why I'm focusing, to begin with, on the state claim. But I will answer that on the federal claim. The federal claim has also, I think, been more thoroughly and more well briefed by both sides in this case, which is why I've tabled it to the side a little. But on the federal claim, it is my belief that the standards for an unlawful seizure, and particularly an unlawful seizure based on some sort of discriminatory animus, which has been alleged in this case, is a bit higher. And there is a little bit more latitude in law enforcement officers on that, on the seizure level. I do believe we survived that claim, but to answer your question more directly, in this case, the state claim has a significantly different burden because it is a discrimination in public accommodation claim. It doesn't rely entirely on Officers Davis and Temple being law enforcement officers. They could well have been park rangers. They could well have been a city manager patrolling the park or viewing. They could be anybody in a position of a government authority not allowing them to use the park in an equal manner as other non-African American patrons. But if we look at the, and I'm looking at your state law discrimination claim, it seems to me we don't have to look too hard on a prima facie case for whether your clients are a member of the protected class or that this is a public accommodation. Everybody's kind of agreed to that. So the next thing we have to look at is whether they were treated differently than other persons not in their class. Well, I guess that's where I'm determining. First of all, I think because the summary judgment, and you emphasized that point and I was happy, I have to take your facts as they are. They can't come up with other facts. You say they were all white someplace else, and so I have to take your facts that way. But that isn't the end of the question to me. It's were they similarly situated. As I read the record, and I read it pretty clearly so I could get to the bottom line here, the other fishermen were not in a high-crime area. Those that your clients wanted to point the bucket at were not in a high-crime area. They were in a different area. There's no evidence opposite that fact. So how are they similarly situated if they're not in the high-crime area? Certainly, Your Honor. For a number of reasons, it is our position that the high-crime area aspect to this case and to the defendant's portrayal of this case is a little bit of a red herring, for lack of a better term. Red herring. It's a similar. You can't say your clients were in the same area as those they didn't go contact, and that's the big point you've got to make. They didn't contact white people as they did your clients who were African-American. But your prima facie case has got to say they're not in the same class. Okay, so I'll say for a prima facie case they're not black, they're white. But the bottom line is they weren't situated in the same place. One was in a high-crime area and one was not. That's the evidence. Understood. Your Honor, the lake that we're talking about, and this has been briefed and I believe may otherwise be part of the record in deposition transcripts, is a small lake. It is one mile in circumference. Well, I'm in Idaho, so I know one mile lakes are circumferences. But one mile lakes are cumbersome. I'm telling you, you can have one side that's really in crime and you can have one that isn't. Certainly. And every evidence in this case says one side was certainly high-crime and one wasn't. Certainly, Your Honor. And the high-crime nature of a certain area of this lake, as presented by defendants, has What evidence do you have that wasn't the high-crime area? I didn't see any. What evidence do you have that the other side was high-crime? I didn't see any. So I have to go on the evidence I got in front of me. Understood, Your Honor. And the alleged high-crime area is supposed to have been a wooded area, a wooded area that would often contain illegal campsites. Which is exactly where the police came from. They were just in that wooded area and came right down and found your client. Certainly. And my clients were in an open public fishing dock, clearly visible to anyone who looked at them as fishing, with a young boy. Do we have any evidence that's not the high-crime area? I looked for it. I got nothing from you to suggest it isn't. What we have from the officers themselves is that the high-crime area is the wooded area, where people hide. I mean, it's fairly Which is right next to the dock where your people were. So that gets the officers onto the dock. And from that point, and this is our point, the actions and particularly the facts which have been either shaded over or completely neglected by the defense, there are some facts that give rise to this claim and show that the district court erred in dismissing this on summary judgment. If we say that the officers come to the dock naturally because they're near the high-crime area. As I understood the evidence, they're not near it at the dock. The dock is in the high-crime area. So if we concede that for sake of argument here and the officers then make their way onto the dock, they've done, it is as briefed, it is our position that by completely blocking the plaintiffs off and disallowing any movement away from them, there's a problem. But even leaving that aside, they come to the dock, they've done their job at some point after checking the warrant status of these people. Okay, you're confusing a little bit. You've got the state claim, you've got the federal claim. It seems to me you're kind of wishing back and forth between the two here. I thought we were talking about the federal claim for a moment. No, I'm on the state claim. Okay. But simply as a matter of fact. We just finished this part of the federal claim. In addition to the high-crime area, my understanding is that the city put on evidence that it was a very hot day and that the people who were on the other side of the lake, one mile in circumference, wherever they were over there, that it was very hot, it would have taken some time to walk over and talk to them, and that's why they didn't go talk to them. Do you dispute that? I don't dispute that. Any evidence that suggests that that's not true for purposes of this summary judgment? The hot day portion I don't dispute. What about that they didn't go over there because it was hot? Well, my position would be, and this goes into the missing factual piece I was about to explain, is that that may well be presented to a jury. Well, I get your point, but as Judge Smith has pointed out, and indeed you started out with the point, this is a summary judgment. So we take what's there. Whatever might be presented to a jury, if you got to a jury, right now we're looking at the evidence that's there. If there's nothing to counter it, then we have to take that as being true. Isn't that correct? That's correct. All right. Now you want to move to your state claim. Okay. And I'm on a state claim. As we go to the state claim, and I think you've answered my question then as to the treatment of the different people not in the class, the fourth thing that you have to prove for your prima facie case was their protective status was a substantial factor causing the discrimination. Okay. I read McKinney. This is the Washington Court of Appeals case, 13P3, 631. I read it pretty carefully because it seems to me that's dead on. It says, and I'm just talking what it says, officers knew the appellants were African American before approaching them and detaining them for 10 minutes. Did not detain white people. So any inference that treatment standing alone is insufficient evidence of a prima facie case, that's all I can read out of McKinney. The treatment alone is insufficient standing alone to give a prima facie case. Because in McKinney, the officers knew they were African American before approaching them. They detained them for 10 minutes. They didn't detain the white people. They're the ones who are now, this is Washington telling me what Washington does with its own discrimination law. They said no discrimination in that instance. Well, Your Honor. So then I see to myself, well, then if that's not discrimination, how can I say this is? Well, Your Honor, in McKinney, we've distinguished McKinney and I maintain that we continue to distinguish McKinney in that under the facts of that case, which was a criminal case which began, I mean, it began with these officers acting on a report which gave them probable cause to detain and question that suspect. In our case, they've never even asserted that they had probable cause. They say they were doing their normal sweep through the high crime area. So you're saying McKinney does not stand for the proposition that the appellant can contact only African Americans and detain them for 10 minutes and not detain white people and that is not prima facie evidence? What I'm saying, Your Honor, is that... Are you saying that case doesn't say that? I'm distinguishing that case on its facts, Your Honor. I'm saying that if we have suspect X here who happens to be, name your race, and suspect Y here who happens to be a different race, but we have probable cause through an informant, through dispatch, through some other means, that suspect X is who we need to be talking to, then race becomes irrelevant. Well, let's assume for a minute that you're right. I'm not sure that I agree with you. But what evidence is there in this case that the actions of the officers were, in quotes, motivated by race, in quotes? So, Your Honor, in the end, it relies on two things. The officers, once they completed what I would, for purposes of argument even, then begrudgingly concede is a legitimate job, which is to run these plaintiffs for warrant checks, find out if they're bad people, if they're unregistered sex offenders, whatever that might be. Find out if they have alcohol on their person or anything else they accuse them of possibly doing. Once that's done, they wish them a good day or not, but they leave. The fact is, in this case, they didn't. They didn't leave, and they blocked off and they stood there in their authoritative pose with 20 pounds of gear on, waiting and staring until the plaintiffs left. How would you suggest that they should have stood? You know, they can stand anywhere. Do they have to go like this? Do they have to turn around? What do they have to do? Well, we don't, I think it should go without saying that body language, we've known for, body language. I'm just asking you, it's a hot day. Sure. Here are these cops out there. I mean, I have a lot of empathy for your clients. Don't get me wrong, anybody, I don't care who they are. It's an uncomfortable situation. But I'm just asking you, as a practical matter, they're dressed like police officers. They're standing there. I'm asking, what should they have done to satisfy your concern? And I'm still asking, as I did before, what's the evidence that whatever they did was motivated by race? Because that's a key factor that you've got to show. It is a key factor, but I don't have to show it to a trial standard. Otherwise, there wouldn't be no trials. And this is my final argument before I reserve a little bit of time in what I came here today. To argue is that I believe, particularly on the state law claim and particularly as to the pretext element, which I understand your honors are focusing in, mostly interested on the prima facie element. All I want to know right now is what's the evidence that what they did was motivated by race? What's your best argument that it was? My best argument is that they did not enforce, they didn't behave the same way to any other fisherman who was not black, and that, and that's what I've been trying to do, is combine that with the fact that they didn't leave when their job was completed. They waited until plaintiffs left. They made plaintiffs leave. Did they ever cite anybody or pat down or touch them? They did not pat down anybody, no. And there were no citations because there was nothing to cite. All right. I just wanted to make sure that I made that, that I had that down. So you want to save the rest of your time then? I would, your honor. Okay, very good. Let's hear from the city. Are there any diagrams in the record to indicate the relationship of the dock to the wooded area? No, there's not, your honor. And good morning, may it please the court. Any physical description of it? I think all that is in the record, your honor, is that the lake itself is approximately a mile in circumference and the distance from where the dock in question, where the appellants were located, to where the other dock was located is several hundred yards. That's all we know. No relationship of the dock to the wooded area? Oh, the wooded area, I think it's clear from the record, your honor, that the wooded area is directly adjacent to the dock. That the officers walk out of the woods, the dock's flush. That it's wooded right up to the point of the dock. I think that that's actually indicated in the record in the declaration of Officer Temple. And I think it's worth noting that just several hundred yards away, the officers did issue a citation that day to a man for illegally camping in the area. So as they're conducting their sweep to address the problems specifically of illegal campers, unregistered sex offenders, people who are trying to secrete themselves from police observation, they did issue a citation for someone else. They popped out of the woods, and there are the appellants. And I might as well introduce myself. My name's Richard Jolly, and I'm here on behalf of the appellees, the individual police officers in the city. Long way from home, weren't you, Mr. Jolly? It depends on your perspective, your honor. I think that what is worth noting here is that the court points out that there is no prima facie case made by the appellants based on the record because there are no similarly situated fishermen there on the dock that we can compare to the appellants who are part of the protected class. But even assuming that a prima facie case is made out, what's required here is that the appellants would present some evidence of pretext once the police officers provide a legitimate, non-discriminatory explanation for their conduct. And you think that being a hot day and 20 pounds of equipment is a legitimate explanation? I think that that factors into it, your honor. But I think what's more significant here is that the whole purpose for being there that day is to address the crime problems that are on the wooded area of the lake. As pointed out in the excerpts of record from the declarations of Captain McDonald and Officer Temple, the area of the lake where the other fishermen are located is easily accessed by car. There's a parking lot right there. And so police can easily pull up there and observe what's going on and therefore there are no problems on the other end of the lake where, for purposes of today, the white fishermen were located. But on the opposite end of the lake where the appellants are located, that's where the problems are. And so I think the fact that it's a hot day and that they're wearing a lot of equipment and that they're not there to enforce the fishing regulations, I think all of those factor in. But I think the most significant factor here is that the real legitimate law enforcement purpose for being there is only on the end of the lake where the appellants are located. And once we've presented a legitimate, non-discriminatory explanation for our actions, then the burden shifts once again to appellants to present some evidence that it's just a pretext and the record is void of anything related to that that would show that this is a pretext. And I think that... My biggest worry in this particular case, and I'm sorry to interrupt you, but my biggest worry for you is the Fourth Amendment claim. Now, I realize some have said federal claim and state claim. I don't know exactly what they're talking about, so I'll just say Fourth Amendment claim. Washington, U.S. v. Washington, a person is seized of taking into account all the circumstances surrounding the encounter. The police conduct would have communicated to a reasonable person he was not at liberty to ignore the police presence and go about his business. Now, here's what I read. I was shocked by what I read. This guy walks up to these people, says, Where are y'all from? They didn't like that, so they responded, You can't assume just because we're two African Americans fishing together that we're together. So he says, Where are y'all from again? And then they said we're not for the city. Well, he doesn't turn. He says, Well, you know you'll go to jail if there's alcohol present. Smoking is not allowed in the park. You know I could arrest you. And then he lists all these possible violations. Do you have fishing licenses? So then he goes and runs a warrant. Then he comes back and says, Adults are not allowed to fish in the Bradley Lake. It doesn't matter what the website says. I mean, really? Looks to me like this guy is over-impressed with his own importance here. And he's standing there with a gun and his partner at the end of the deck. Your Honor, we would agree. And you're going to say that these people shouldn't have thought that all the circumstances surrounding the encounter, they were well at liberty with the police standing at the end of that dock to ignore them and go about their business. Well, Your Honor. He wouldn't even let them go about their business. Your Honor, we would not agree. We would agree with the characterization that Officer Temple made some missteps. He provided wrong information about the fishing regulations. And maybe his, for lack of a better term, bedside manner wasn't what the Puyallup Police Department would want as far as community relations. But we don't think that any of that rises to the level of conduct that would be so coercive in nature as to make appellants believe that they were not free to cooperate. In fact, one of the appellants, Mr. Disnute, is a felon who was on probation at the time. He readily admitted, and it's submitted as one of the excerpts of record. It didn't concern him in the slightest that the police officers were there. He indicated in his deposition that when he saw the police officers, he didn't have any problems. He wasn't scared. He wasn't nervous because he knew that his probation matters were all in line, that he didn't know any fines, that there were no warrants. And Mr. Curry, the other appellant, admitted that he was cooperative the entire time, that at no time did he indicate to the officers that he didn't want to answer questions. In fact, he indicated that he was willing to go back to his truck and get additional identification if necessary. What are the factors that I have to consider in U.S. v. Washington? The number of officers. They had two. Whether weapons were displayed. They didn't ever take them out, but there's no question they were on their belt. Whether the encounter was in a public place. Absolutely in a public place. Whether the tone or manner was authoritative so as to imply compulsion. Well, I don't know how you can get more authoritative. You're going to go to jail if alcohol is present. Smoking is not allowed here. You know I could arrest you for any number of things. Do you have licenses? Well, Your Honor, I... Did they ever inform him of the right to terminate? No. So, I mean, I'm, again, looking at the factors. Well, and I think looking at the factors that you look at. First, the comment that Officer Temple says, where are y'all from? The idea that there is something coercive, authoritative in the use of the phrase y'all. Your Honor, I can't agree with that, and I think that there would be whole regions of the United States that would be under particular scrutiny if the term y'all somehow was coercive or authoritative. And when Officer Temple recites the litany of violations that are not allowed in the park, that's just a statement of fact. And at no point does Officer Temple indicate, if you do not provide identification, you're going to jail. If you don't provide identification, I'm going to get a warrant. If you don't provide identification, I'm going to take some further law enforcement action. The fact that he is armed, that's every patrol officer in the United States, Your Honor. There's no reference that he reaches for his weapon, no reference that he unsnaps his weapon, no reference that he somehow physically gets in the space of the plaintiffs. I would suggest to the court that the only factor here worth considering is that the police officers are blocking the only avenue of exit from the dock. There's no doubt about that. But just the nature of the circumstances here, if the officers are going to approach, they had no choice but to walk onto the dock. And we know from the record that the appellants made no effort to leave, that the appellants didn't indicate to the officers that they wanted to leave. Well, they didn't want to leave. They wanted to go about their business, which was to fish. I would agree, Your Honor. I mean, if they wanted to leave, that would be something you could argue, but they didn't want to leave at all. But looking at the totality of the circumstances, while, again, Officer Temple's manner with appellants is something that's not condoned by the Puyallup Police Department, and an investigation was undertaken, even though we don't have a Monell claim here. The fact that he lists a litany of violations and he uses the term y'all, I would suggest that that doesn't rise to the level of a Fourth Amendment violation, and there's no similar case law that we could find anywhere that would indicate that this was anything other than a social contact. Well, speaking for myself, I don't know what we're going to do with the Washington claim in terms of the case law, but I can't imagine that any one of us, if we put ourselves in the situation of the plaintiffs here, would be anything but angered, deeply angered by what happened. It was offensive, humiliating, and inappropriate. Whether it was unlawful, we're going to have to determine. But I hope that you will convey to the city and to the officers in question that what they did was totally inappropriate from any perspective. Again, I'm not saying legally whether there's a claim, but this ought not to happen. It ought not to happen. It was just wrong. This was not a social contact. They weren't out there to, hey, guys, let's have a beer. They were intimidating these folks. They were interfering with what they were doing, and I hope you'll convey that message to the city and the officers because whatever we do here, we don't want anybody to have the impression that in any way this court or any of the judges on this court condone what happened because we don't. Absolutely, Your Honor, and the city readily acknowledges that Officer Temple's actions on that day, well, the fact that he ruined the fishing experience for the appellants, specifically Mr. Curry and his son, that's highly unfortunate. Yet we would suggest to the court that that still doesn't rise to the level of a Fourth Amendment violation, and there's no evidence here of any racially motivated conduct, and the court is bound by the record that we've got before us, and we would submit that the record supports the district court's decision to dismiss this case at the summary judgment stage. If the court doesn't have any further questions, I'll yield the rest of my time. Thank you. Thank you very much. We have some rebuttal time. Thank you, Your Honor. It looks as if I have one minute and four seconds left, and I may not use it all. I would like to just make two points. As long as we're already there, we'll remain on the federal claim. Plaintiffs, as we've briefed, are a little bit concerned by the notion presented in the defendant's argument that you don't have your civil rights if you comply and if you're cooperative and if you're polite to the police when they're questioning you. In other words, there's not a claim here for illegal seizure because Mr. Disney and Mr. Curry were cooperative. Well, that forces us all, and not everybody can be a civil rights warrior. Not everybody can stand up for themselves at all times. That forces us, however, if we want to have our civil rights, to fight back, and that's what the defendants are asking this court to adopt, is a policy in which as long as you're cooperative and answer questions, your civil rights are not being violated. Well, I'm not so worried about that as I am about what's your best case for where you want us to go. I mean, what my good colleague tried to present to the city was, which when I first took the bench, there were a lot of times when I was faced with police coming after me, I was seized quite often because I did not give any rough talk to the police, and if the police thought I talked like this, I thought I was seized. But then I read the cases, and it seems to me that the level of seizure for a reasonable person in the cases is quite a different level than what you're suggesting here. So I want your best case for the fact they were seized. I mean, my worry is that I read all the cases, and I can't really get to this case. Understood, Your Honor, and I think we can, as the court discussed with my colleague, Mr. Jolly, I believe U.S. v. Washington is on all fours here.  But the most important holding in that case is the discussion of completely blocking someone's movement, and that's what happened in this case, Your Honors. Thank you. Thank you both for your argument, and the case just argued is submitted.
judges: Walter, Smith, Smith